UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PINPOINT INCORPORATED ) <br> ) <br> ) <br>       Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GROUPON, INC. *et al.* ) <br> ) <br> ) <br>       Defendants. ) <br> ) | Civil Action No. 1:11–cv–5597 <br><br> Hon. John F. Grady |

### L. L. BEAN'S MOTION TO SEVER AND TRANSFER

Pursuant to Fed. R. Civ. P. 21 and 28 U.S.C. § 1404(a), Defendant L. L. Bean, Inc. ("L. L. Bean") moves to sever the claims asserted against it by Plaintiff Pinpoint Incorporated ("Pinpoint"), and to transfer those severed claims to the United States District Court for the District of Maine "for the convenience of the parties and witnesses [and] in the interest of justice." 28 U.S.C. § 1404(a) (brackets added). The controlling authority requires severance, followed by transfer. L. L. Bean's motion is supported by the Declarations of Peter Liberatore ("Liberatore Decl.") and David Swetnam–Burland ("Swetnam–Burland Decl.").

### BACKGROUND

On August 16, 2011, Pinpoint filed a complaint for patent infringement against four unrelated defendants: (1) L. L. Bean, a Maine–based clothing and outdoor retailer; (2) Groupon, Inc., an Illinois–based online coupon company; (3) Hotwire, Inc., a California–based online travel services provider; and (4) Orbitz, LLC, an Illinois–based online travel services provider. *See* Complaint (Dkt. No. 1). Pinpoint alleges that each defendant has a website, and infringes

3

two patents—United States Patent No. 5,754,938, entitled "Pseudonymous Server for System for Customized Electronic Identification of Desireable Objects;" and United States Patent No. 7,853,600 B2, entitled "System and Method for Providing Access to Video Programs and Other Data Using Customer Profiles" (collectively, "patents–in–suit")—which Pinpoint claims to own. *See* Complaint (Dkt. No. 1) ¶¶ 3–5. The alleged infringement of each defendant is based on the fact that it operates a website and sends promotional email in conjunction with its business operations. *See*, *e.g.*, *id*. ¶¶ 29–35, 49–50 (allegations against L. L. Bean).

Although pinpointed as litigation targets in the same civil action, Defendants have nothing in common except that Pinpoint has asserted the same patents against them. Pinpoint makes no allegation that this group of unrelated defendants (or any subgroup of them) acted in concert to infringe either of the patents–in–suit. Pinpoint identifies no facts common to their alleged infringement. In sum, rather than filing separate suits against separate defendants, Pinpoint appears to believe that allegations of infringement of the same patents–in–suit provides sufficient glue to bind its claims against all of these defendants in a single lawsuit. As set forth below, that belief is mistaken.

As for L. L. Bean in particular, it is a Maine company, which has been headquartered in Freeport, Maine since its founding in 1912. Liberatore Decl. ¶¶ 5–6. Although it has entered the digital age with its retail website, www.llbean.com ("website"), the company continues to perform all of its business operations, including the operation of the website, in Freeport, just as it does its catalog business. *Id*. ¶ 7. The L. L. Bean employees involved with the operation of the website, customer profiles in connection with the website, and promotional email sent to L. L. Bean customers all work in Maine. *Id*. ¶¶ 7–9. None works in Illinois. *Id*. Similarly, the L. L. Bean employees most knowledgeable about these subjects all work in Maine; none works

4

in Illinois. *Id*. ¶ 10. L. L. Bean also retains documents relating to the operation and maintenance of its website, customer profiles in connection with the website, and promotional email at its Maine offices. *Id*. ¶ 11.

L. L. Bean notes that, in stating that it performs activities with respect to its website, customer profiles in connection with the website, and promotional email in Maine, L. L. Bean is simply describing its operations; it is not conceding the accuracy of the account of L. L. Bean's website or promotional email set forth in the Complaint. Regardless, insofar as this case is about L. L. Bean's website, customer profiles in connection with that website, and promotional email, the relevant activities of L. L. Bean personnel occurred in Maine.

## ARGUMENT

**I.       L. L. BEAN AND ITS CO–DEFENDANTS HAVE BEEN MISJOINED.**

Even before enactment of the new joinder provision in the America Invents Act, H.R. 1249, 112th Cong. § 19 (2011), the courts of this district have made clear that a plaintiff may not join unrelated defendants in a patent action based solely on the allegation that they all infringe the same patent(s). Federal Rule of Civil Procedure 20(a)(2) permits joinder of persons in one action as defendants if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." "Misjoinder occurs when the parties fail to satisfy either of the requirements for permissive joinder under Rule 20." *Rudd v. Lux Prods. Corp.*, 2011 WL 148052, *1 (N.D. Ill. Jan. 12, 2011) (citations omitted). "In the event the Court finds that joinder is improper, Rule 21 comes into effect and allows the Court to add or drop a party, or sever any claim against another party." *Id*. (citing Fed. R. Civ. P. 21).

The rule in patent cases is clear. "This Court follows the prevailing approach of this District and numerous others that have concluded that a party fails to satisfy Rule 20(a)'s requirement of a common transaction or occurrence where unrelated defendants, based on different acts, are alleged to have infringed the same patent." *Id*. at *3 (collecting cases); *ThermaPure, Inc. v. Temp–Air, Inc.*, 2010 WL 5419090, *4 (N.D. Ill. Dec. 22, 2010) ("Courts in this district, however, have consistently held that Rule 20(a)'s requirement for a common transaction or occurrence is not satisfied where multiple defendants are merely alleged to have infringed the same patent or trademark.") (collecting cases from this district); *see also Spread Spectrum Screening, LLC v. Eastman Kodak Co.*, 2010 WL 3516106, *2 (N.D. Ill. Sept. 1, 2010) (granting motion to sever and transfer). Indeed, one Court *sua sponte* severed a case filed by Pinpoint's counsel against multiple, unrelated defendants where the only connection among those defendants was that they were alleged to have infringed the same patent. *See Billingnetwork Patent, Inc. v. Avisena, Inc.*, 2010 WL 45765, *1 (N.D. Ill. Jan. 4, 2010) ("This is not the first time that this Court has encountered the practice of a plaintiff's counsel's attempted joinder of wholly unrelated defendants that provide products or services that assertedly infringe the same patent. This is not an instance of an appropriate joinder in which (say) one defendant manufactures, while another is a distributor of, the same infringing product. Here it would involve an impermissible stretch of the normal meaning of language to characterize Billingnetwork as asserting a right to relief against the five defendants 'with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences.'") (quoting Fed. R. Civ. P. 20(a)(2)(A)).

The result follows from the rule. Pinpoint has accused four defendants of infringing two patents without alleging any commonality among those defendants other than that they allegedly

6

infringe those patents. Because the presence of the same patents–in–suit does not meet the Rule 20 joinder requirements, this Court should sever Pinpoint's case against L. L. Bean from its case against the other defendants.

## II. THE COURT SHOULD TRANSFER THE L. L. BEAN ACTION TO THE DISTRICT OF MAINE.

Once severed, the L. L. Bean action should be transferred to the United States District Court for the District of Maine pursuant to 28 U.S.C. § 1404(a), which authorizes a district court, "[f]or the convenience of parties and witnesses, in the interest of justice" to transfer "any civil action to any other district or division where it might have been brought." *Id*. Motions to transfer patent actions, because they do not touch on issues of substantive patent law, are decided under the law of the regional circuit in which the district court sits. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (mandamus granted directing transfer). Courts in the Seventh Circuit looks to four factors to determine that transfer is appropriate: whether (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; (3) the transferee district is more convenient for both parties and witnesses; and (4) transfer would serve the interests of justice. *Spread Spectrum*, 2010 WL 3516106 at *3.

The parties do not dispute that venue is proper in this district; and Pinpoint cannot dispute that jurisdiction and venue would be proper in the District of Maine. L. L. Bean, a Maine company, may be sued in federal district court in Maine for the alleged violation of federal patent law. *Cf. In re Genentech*, 566 F.3d 1338, 1346 (Fed. Cir. 2009) (section 1404(a) only requires "that the transferee court have jurisdiction over the defendant[] in the transferred complaint," not over the plaintiff) (brackets added).

**Convenience Factors.** The crux of the dispute, then, will be the convenience and justice factors. There are five convenience factors that the Court considers: (1) the plaintiff's choice of

7

forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the parties; and (5) the convenience of the witnesses. *Id.*; *ThermaPure*, 2010 WL 5419090 at *6.

The plaintiff's choice of forum "has reduced value where the forum lacks any significant contact with the underlying cause of action." *ThermaPure*, 2010 WL 541909 at *6 (quotation omitted). "In such a case, it becomes just one of many factors to be viewed by the Court when making its determination of convenience." *Id.* Such is the case here. In a recent series of orders on mandamus petitions, the Federal Circuit Court of Appeals has made quite plain that a district court must ignore any ties to a chosen forum manufactured by a plaintiff in anticipation of litigation. *See In re Hoffmann–La Roche Inc.*, 587 F.3d 1333, 1337 (Fed. Cir. 2009) (transfer of 75,000 pages of documents demonstrating conception and reduction to practice to chosen venue in anticipation of litigation must be considered "a fiction which appears to have been created to manipulate the propriety of venue.") (mandamus granted); *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (decision to move principal place of business to chosen venue "a classic case where the plaintiff is attempting to game the system by artificially seeking to establish venue by sharing office space with another of the trial counsel's clients") (mandamus granted); *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (decision to move principal place of business and incorporate in chosen venue was "no more meaningful, and no less in anticipation of litigation") (mandamus granted).

The fact that Pinpoint is a Texas corporation that moved its headquarters to Chicago on January 1, 2011, before filing suit in August, *see* Complaint ¶ 2, does not tie Pinpoint's case against *L. L. Bean* in any way to Illinois. To the contrary, because of the nature of a patent infringement claim, the focus of the litigation is always on the alleged infringer's conduct. "In

8

patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *Genentech*, 566 F.3d at 1345 (quotation omitted). Accordingly, "the location of the infringer's principal place of business is often the critical and controlling consideration because such suits often focus on the activities of the alleged infringer, its employees, and its documents, rather than upon those of the plaintiff." *Cooper Bauck Corp. v. Dolby Labs., Inc.*, 2006 WL 1735282, *5 (N.D. Ill. June 19, 2006) (quotation omitted); *see also ThermaPure*, 2010 WL 541909 at *6. As set out above, all of the activities performed by L. L. Bean employees that might form the basis for the alleged acts of infringement were performed in Maine. None of those activities was performed in Illinois.

"Liability issues…drive litigation." *Spread Spectrum*, 2010 WL 3516016 at *4 (ellipsis added and citation omitted). By Pinpoint's own account, this case is about L. L. Bean's website, customer profiles connected with that website, and promotional email. In such a case, "the most important sources of proof are the data, records, and the source code" that relate to the accused instrumentality. *Id.*. Such evidence will be found at the corporate headquarters of the defendant. *Id*. In this case, that location is Freeport, Maine. Put differently, "[k]eeping this case in the [Northern District of Illinois] will impose a significant burden on [L. L. Bean] to transport documents that would not be incurred if the case were to proceed in the [District of Maine]." *Genentech*, 566 F.3d at 1346 (brackets added); *see Rudd*, 2011 WL 148052 at *6 (in patent infringement action, place where defendant's documents are kept weighs in favor of transfer to that location).

The convenience of the parties and witnesses also favors transfer. The overall burden of litigating Pinpoint's case against L. L. Bean would be greater in this district. While Pinpoint would no doubt experience inconvenience litigating in Maine, Pinpoint has already committed

9

itself to litigating part of this case in Maine by suing a Maine company. Any corporate deposition of L. L. Bean, or deposition of Maine–based witnesses, will necessitate travel to that state. *See*, *e.g.*, *Zuckert v. Berkliff Corp.*, 96 F.R.D. 161, 162 (N.D. Ill. 1982) (corporate depositions generally taken at corporation's principal place of business); *cf. Rudd*, 2011 WL 148052 at *5 (convenience of *counsel* not a factor in transfer analysis). L. L. Bean, on the other hand, would face the more significant burden of litigating a case in Chicago about what a Maine company and its Maine–based employees allegedly did in Maine to infringe the patents–in–suit. As the majority of the critical witnesses live and work in Maine—and would face a far greater disruption to their work and lives from having to travel to Chicago to appear for trial in this case—this factor too favors transfer. *See Rudd*, 2011 WL 148052 at *6 (that defense "witnesses would suffer the inconvenience of constant travel to and from their home state, to a foreign jurisdiction" weighs in favor of transfer).

**Interest of Justice Factors.** In addition to the convenience factors, the Court considers whether transfer is "in the interest of justice." 28 U.S.C. § 1404(a). Relevant factors can include the likelihood of a speedy trial, familiarity with particular law, the relationship of the community to the litigation, and the desirability of resolving disputes in their location. *Spread Spectrum*, 2010 WL 3516016 at *5. Because patent law is federal statutory law, the familiarity factor does not apply, as each federal district is equally familiar with the relevant law and legal principles. *Rudd*, 2011 WL 148052 at *7.

By any metric, the docket of the District of Maine is less burdened than the docket of this Court. According to statistics drawn from *Judicial Business of the United States Courts*, the Annual Report of the Director of the Administrative Office of the United States Courts for 2010, as of September 30, 2010, the District of Maine had 395 pending civil actions. *See* Swetnam–

10

Burland Decl., Ex. A. By contrast, the Northern District of Illinois had 8,786 pending civil cases. *See id*. During the twelve–month period from September 30, 2009, to September 30, 2010, the District of Maine held nine civil trials; the study did not report a median time to trial as the number of trials was fewer than ten. *See id.*, Ex. B. The Northern District of Illinois conducted 113 civil trials in that same time period, with a median time interval of 28.2 months. *See id*. Perhaps most relevantly, during the same time period, the District of Maine had three pending patent actions. *See id.*, Ex. C. The Northern District of Illinois had 259 pending patent cases. *See id*.

Of the two venues, the District of Maine has the stronger ties to the outcome of this case. "In patent cases, 'the locale of infringement actions is often the primary place of the defendant's operations.'" *ThermaPure*, 2010 WL 541909 at *9 (quoting *BorgWarner, Inc. v. Hilite Int'l, Inc.*, 2008 WL 3849908, *6 (N.D. Ill. Aug. 14, 2008)). A Maine company that performed allegedly infringing conduct in Maine "has an interest in a court in its own state deciding liability and damages." *Rudd*, 2011 WL 148052 at *7. This case has relevance to the District of Maine, as the accused instrumentality and all conduct performed by L. L. Bean related to it are in Maine, which is also the location of the relevant witnesses and evidence. *Id*. The citizens of the Northern District of Illinois do not have a comparable interest in adjudicating the conduct of L. L. Bean as they would have if the defendant were a Chicago–based business, for example. *See Spread Spectrum*, 2010 WL 3516016 at *6. "[L. L. Bean's] headquarters are in the District of [Maine], its employees are in that district, and that district accordingly is where the impact of the adjudication of [Pinpoint's] claims would be felt." *ThermaPure*, 2010 WL 541909 at *9 (brackets added). The interest of justice factor weighs in favor of transfer. *Id*.

11

"[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) (brackets added and citations omitted). Because this is such a case, the Court should order a transfer of the L. L. Bean action to the District of Maine.

## CONCLUSION

Based on the foregoing, L. L. Bean respectfully requests that the Court grant its motion to sever and transfer.

Dated: October 10, 2011

/s/ Daniel L. Farris
R. David Donoghue
Daniel L. Farris
HOLLAND & KNIGHT
131 S. Dearborn St., 30th Floor
Chicago, Illinois 60603
Tel: (312) 263–3600
Fax: (312) 578–6666
david.donoghue@hklaw.com
daniel.farris@hklaw.com

Peter J. Brann
David Swetnam–Burland
Stacy O. Stitham
BRANN & ISAACSON
184 Main Street, 4th Floor
Lewiston, ME 04243−3070
Tel: (207) 786−3566
Fax: (207) 783–9325
pbrann@brannlaw.com
dsb@brannlaw.com
sstitham@brannlaw.com
(admitted *pro hac vice*)

*Attorneys for L. L. Bean, Inc.*

## CERTIFICATE OF SERVICE

I certify that on October 10, 2011, I filed L. L. Bean's Motion to Sever and Transfer with the Clerk of the Court using the CM/ECF system, which will send notice to counsel of record.

/s/ Daniel L. Farris