IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PINPOINT INCORPORATED, | |
| Plaintiff, | Civil Action No. 1:11-cv-05597 |
| v. | Honorable John F. Grady |
| | Mag. Judge Denlow |
| GROUPON, INC., HOTWIRE, INC., L.L. BEAN, INC. and ORBITZ, LLC, | |
| Defendants. | |

**PINPOINT'S OPPOSITION TO DEFENDANT
L. L. BEAN'S MOTION TO SEVER AND TRANSFER**

L. L. Bean, Inc. ("L. L. Bean") is properly joined under Rule 20(a)(2) and its motion to sever and transfer should be denied for the following reasons: (1) Pinpoint is headquartered in Chicago and transferring the case to Maine would merely shift the inconvenience from L. L. Bean to Pinpoint, (2) L. L. Bean admits that it transacts business in this judicial district, (3) L. L. Bean has retail outlets in this judicial district, (4) judicial economy would best be served by keeping L. L. Bean in the same case with the other defendants, and (5) maintaining one civil action including L. L. Bean eliminates the possibility of inconsistent rulings in different judicial districts.

## I.     JOINDER IS APPROPRIATE UNDER RULE 20(a)(2)

Courts permit joining defendants if: "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise out of the action." Fed.R.Civ.P. 20(a)(2).  Rule 20(a)(2) as applied to this case dictates that the joinder will be permitted if 1) there is a right in relief in respect to or arising

out of the same transaction or occurrence, and 2) that there is any common question of law or fact.

L. L. Bean fails to properly address these two prongs and instead relies upon inapposite opinions and cites the later-enacted America Invents Act, H.R. 1249, 112th Cong. §19 (2011). L. L. Bean relies on <u>ThermaPure, Inc.</u> v. <u>Temp-Air, Inc.</u>, 2010 U.S. Dist. LEXIS 136262 (N.D. Ill. Dec. 22, 2010) and <u>Spread Spectrum Screening, LLC</u> v. <u>Eastman Kodak Co.</u>, 2010 WL 3516106 (N.D. Ill. Sept. 1, 2010). These cases are distinguishable. In <u>Spread Spectrum</u>, the court allowed a customer of Kodak to be severed from Kodak's suit, where that customer had nothing substantive to offer and likely did not even understand how the product worked. <u>Spread Spectrum Screening, LLC</u>, 2010 WL 3516106 at *3. Here, L.L. Bean admits that its employees are responsible for the website and presumably know how the accused functions work. <u>ThermaPure</u> is inapposite because neither the plaintiff, ThermaPure, nor the transferred defendant, Temp-Air, were Illinois companies or had a presence in Illinois. <u>ThermaPure</u>, 2010 U.S. Dist. LEXIS 136262 at *4-5. Here, Pinpoint is headquartered in Illinois and L. L. Bean has stores in Illinois and its interactive website indisputably reaches out to Illinois residents. Likewise, L. L. Bean's reliance upon the provisions of the America Invents Act is also inapplicable since it was signed into law on September 16, 2011, one month after this case was filed on August 16, 2011. (Docket No. 1); America Invents Act, H.R. 1249, 112th Cong. §19 (2011) ("The amendments made by this section shall apply to any civil action commenced on or after the date of the enactment of this Act.").

**A. The Transaction Or Occurrence Prong is Satisfied**

The "transaction or occurrence" prong is met under Fed.R.Civ.P. 20(a)(2). "The Seventh Circuit has favored liberal joinder of parties where appropriate." <u>Rolex Watch, USA, Inc.</u> v. <u>Afzal</u>, 1992 U.S. Dist. LEXIS 2504, *3 (N.D. Ill. Mar. 5, 1992) (ruling in favor of joinder where

the same private investigator discovered the same individual was allegedly violating both Rolex and Fendi's trademarks). In fact, "[c]ourts have consistently held that 'transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." Sprint Communs. Co., L.P. v. Theglobe.com, Inc., 233 F.R.D. 615, 617 (D. Kan. 2006) (denying motion to sever based on improper joinder of patent infringement defendants); MyMail, Ltd. v. Am. Online, Inc., 223 F.R.D. 455 (E.D. Tex. 2004) (denying motion to sever based on improper joinder of patent infringement defendants stating "[t]ransactions or occurrences satisfy the series of transactions or occurrences requirements of Rule 20(a) if there is some connection or logical relationship between the various transactions or occurrences"). This interpretation of "transaction" should apply and:

> is bolstered by the observation that "language in a number of decisions suggests that the <u>courts are inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense</u> to the parties and to the court." 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1653.

Sprint Communs., 233 F.R.D. at 617 (emphasis added). The likelihood of overlapping proof in this case is high.

The "logical relationship" between the parties is what most courts look to in weighing if the "transaction or occurrence" prong of Rule 20(a) is met. See Coll v. Abaco Operating LLC, 2009 U.S. Dist. LEXIS 78438, *12 (E.D. Tex. Sept. 1, 2009). See also Mosley v. General Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974) ("Accordingly, all 'logically related' events entitling a person to institute legal action against another generally are regarded as comprising a transaction or occurrence."). There will be a logical relationship if there is some nucleus of operative facts or law. Coll, 2009 U.S. Dist. LEXIS 78438 at *12. The main factors courts use to determine if

there is some nucleus of operative facts, and thus, a shared transaction or occurrence, in a patent case, include:

- The relationship the complaining party shares with the other parties

- Whether the accused products differ dramatically

- Whether the same patent is being asserted against each defendant

These factors support keeping L. L. Bean in the current lawsuit.

### 1. The Accused Products Are Very Similar

The accused products of each defendant are very similar; thus, L. L. Bean should not be severed from this suit. MyMail, Ltd. v. Am. Online, Inc., 223 F.R.D. 455, *9 (E.D. Tex. 2004) ("More significant to the court than whether the parties are related or whether they share marketing and sales efforts is whether the plaintiff alleges any connection or substantial similarity between the machines at issue."). See also Mannatech, Inc. v. Country Life, LLC, 2010 U.S. Dist. LEXIS 75353, *5 (N.D. Tex. July 26, 2010). All of the defendants are accused of infringing at least claim 1 of the '938 patent and claim 29 of the '600 patent though the operations of their internet websites and targeted email sent to customers. (Docket No. 1 at ¶¶ 15-42). All of the accused products are extremely similar. All of the defendants' accused products involve proxy servers, web servers, databases, websites, user accounts, customer profiles, and targeted email offers to specific customers.

### 2. The Same Patents Are Being Asserted Against Each Defendant

Each defendant is accused of infringing at least claim 1 of the '938 patent and claim 29 of the '600 patent. The same patents and claims being asserted against multiple defendants weigh in favor of joinder. Oasis Indus., Inc. v. G.K.L. Corp., 1995 U.S. Dist. LEXIS 3513 (N.D. Ill. Mar. 20, 1995) (Magistrate Judge Guzman recommending that the Court deny the motion to sever where different individuals were accused of infringing the same patent.). See also Adrain v.

<u>Genentec Inc.</u>, 2009 U.S. Dist. LEXIS, *7 (E.D. Tex. Sept. 22, 2009) (Ruling that defendants' actions arose out of the same transaction or occurrence because they each had a similar license plate recognition system which allegedly infringed the same claims on the same patent).  The fact that each defendant is accused of infringing claim 1 of the '938 patent weighs in favor of keeping all defendants in this suit.

### B.  There Are Common Questions Of Law Or Fact

There are numerous common questions of law and fact between L. L. Bean and the other defendants. Importantly, Rule 20 requires only that "**<u>any</u>** question of law or fact common to all defendants will arise in the action," not that **<u>all</u>** questions of law or fact must be common.  Fed. R. Civ. P. 20(a) (emphasis added). Of course, there is a very important question of law concerning all of the defendants; namely, claim interpretation.   A patent case alleging infringement by multiple defendants of the same patents will present a court "with duplicative arguments and overlapping evidence."   <u>Sprint Communs.</u>, 233 F.R.D. at 617.   With this inevitability in mind, "the primary purpose behind Rule 20 . . . is to join separate defendants if the joined suits have overlapping issues." <u>Id</u>.  Among other efficiencies, "[w]itnesses should not be deposed more than once on identical issues."  <u>Id</u>.  Importantly, "severing . . . claims before trial would produce inconsistent pretrial rulings, particularly in construing the patents . . . ."  <u>Id</u>. at 618.

In addition, the same issues of patent validity will likely arise as to each defendant. Defendants L.L. Bean, Hotwire and Groupon have all asserted counterclaims for declaratory judgment of patent invalidity. (Docket Nos. 39, 44, 46).  Many of the factual determinations underlying the legal issues will also be common.  For example, obviousness under 35 U.S.C. § 103 involves numerous factual determinations regarding the level of skill in the relevant art, the scope and content of the prior art, application of the prior art to each of plaintiff's patents and

more.  This is the same for each defendant.  <u>Monarch Knitting Mach. Corp.</u> v. <u>Sulzer Morat</u>

<u>GmbH</u>, 139 F.3d 877, 881-886 (Fed. Cir. 1998).  The same factual issues concerning "objective

indicia" of nonobviousness must also be decided, including, *inter alia*, commercial success, long

felt need, and industry recognition.  <u>Graham</u> v. <u>John Deere Co.</u>, 383 U.S. 1, 17-18 (1966).

Whether the patents-in-suit are invalid for anticipation under 35 U.S.C. § 102 is also a common

question of fact for each defendant.  <u>Minnesota Mining & Mfg. Co.</u> v. <u>Johnson & Johnson</u>

<u>Orthopedics, Inc.</u>, 976 F.2d 1559, 1565 (Fed. Cir. 1992).  These are just a few examples of the

numerous identical issues that are present.  It makes no sense to have multiple actions pending in

multiple districts addressing the same issues of claim interpretation and validity.

## II.      JUDICIAL ECONOMY AND EXPEDIENCY ALSO SUPPORT THE JOINDER OF THESE DEFENDANTS

Last, but certainly not least, judicial economy would be best served by keeping L. L.

Bean in the current case. Judicial economy is a driving interest in Rule 20(a)(2). <u>Schindler</u>

<u>Elevator Corp.</u> v. <u>Otis Elevator Co.</u>, 2009 U.S. Dist. LEXIS, *6 (D.N.J. May 14, 2009) ("The

term 'transaction or occurrence' is construed generously to promote judicial economy."). *See also*

<u>Alkot Indus., Inc.</u> v. <u>Takara Co., Ltd.</u>, 1985 U.S. Dist. LEXIS, *10 (N.D. Ill. May 8, 1985)

("Rule 20 has a recognized goal: 'to be read as broadly as possible whenever doing so is likely to

promote judicial economy.") (citing Wright and Miller § 1653, at 276).

It simply makes no sense to sever and transfer L. L. Bean to the District of Maine.  Such

a decision has two likely outcomes.  First, two cases progressing along the same track – with two

<u>Markman</u> decisions, discovery tracks, and potentially two trials. <u>Sprint Communs.</u> at *8 (Holding

that interpreting the same patents in different suits gives rise to the prospect of inconsistent claim

constructions and wasting scarce judicial resources). Second, cases in different judicial districts

would be subject to a request to the Judicial Panel for Multidistrict Litigation, likely resulting in

consolidation of the same parties into one case for pretrial proceedings. Either way, it makes more sense from a judicial economy perspective to have all of the defendants, including L. L. Bean, in one case in the Northern District of Illinois.

### III.   PINPOINT'S CLAIMS AGAINST L. L. BEAN SHOULD NOT BE TRANSFERRED TO MAINE

In addition to requesting that it be severed, the only such party to make such a request, L. L. Bean has also requested that the case against it be transferred to the District of Maine. As L. L. Bean admits in its motion, venue and jurisdiction are proper in this district for Pinpoint's claim of patent infringement. L. L. Bean has two retail outlets in this judicial district, one in Skokie and the other in South Barrington. (Ex. A, L. L. Bean store locations). In addition, L. L. Bean operates a twitter feed directed specifically to Chicago and the retail outlets in this judicial district. (Ex. B, http://twitter.com/#!/LLBean_Chicago). Therefore, L. L. Bean's motion to transfer is based on its argument that Maine would be more convenient for it than the Northern District of Illinois. However, Maine is not more convenient for Pinpoint and Pinpoint has no contacts with Maine; indeed, there is not even personal jurisdiction over Pinpoint in the District of Maine.

### A.   Convenience Does Not Favor a Transfer

The issue of convenience is evaluated based on five factors: (1) plaintiff's choice of forum; (2) situs of material events; (3) availability of evidence; (4) convenience of parties; and (5) convenience of witnesses. Amoco Oil Co. v. Mobil Oil Corp., 90 F. Supp.2d 958, 960 (N.D. Ill. 2000). Furthermore, to prevail on a motion to transfer for convenience, L. L. Bean must prove that Maine would be "clearly more convenient" than Illinois. Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219-220 (7th Cir. 1986).

### 1. Plaintiff's Choice of Forum

Plaintiff's choice of forum is typically given a great deal of deference.  Amorose v. C.H. Robinson Worldwide, Inc., 521 F. Supp.2d 731, 735 (N.D. Ill. 2007).  Pinpoint's headquarters are located in Chicago, so the Northern District of Illinois is clearly more convenient for Pinpoint.  On the other hand, Pinpoint has no contacts with Maine.  Accordingly, this factor weighs against transfer.

### 2. Situs of Material Events

The situs of material events is largely irrelevant in a patent case.  Kolcraft Enters. v. Chicco USA, Inc., 2009 U.S. Dist. LEXIS 101605, *8 (N.D. Ill. 2009) ("infringement is determined by comparing the alleged infringing device or product with the language of the claim" and so "the material events of a patent infringement case do not revolve around a particular situs.").  Accordingly, this factor is neutral and does not clearly favor transferring the case to Maine from Illinois.

### 3. Availability of Evidence

Pinpoint's documents and materials are located at its offices in Chicago. Despite offering a website that reaches into Illinois, L. L. Bean claims that its documents are located in Maine. However, "[i]n this day and age, transferring documents from one district to another is commonplace and, given the widespread use of digital imaging in big-case litigation, no more costly than transferring them across town."  Rabbit Tanaka Corp. USA v. Paradies Shops, Inc., 598 F. Supp.2d 836, 840 (N.D. Ill. 2009).  Accordingly, this factor is neutral and does not clearly favor transferring the case to Maine from Illinois.

### 4. Convenience of Parties

This factor takes into account where the parties reside.  Illinois is Pinpoint's headquarters, while L. L. Bean is based out of Maine.  However, L. L. Bean has retail stores in

this judicial district. Moreover, transferring this case from Illinois to Maine is inappropriate because it would "merely transform an inconvenience for one party into an inconvenience for the other party." Tech Concepts L.P. v. Zurn Indus., 2002 U.S. Dist. LEXIS 21020, *15 (N.D. Ill. 2002). Since transferring this case would merely shift the burden from L. L. Bean to Pinpoint, this factor weighs against transferring the case to Maine.

### 5. Convenience of Witnesses

The convenience of witnesses is often considered the most important factor, and, in particular, the convenience of non-party witnesses is more important since they are not within a party's control. Event News Network, Inc. v. Thill, 2005 U.S. Dist. LEXIS 26643, * 16 (N.D. Ill. 2005). Pinpoint's headquarters, documents, and general counsel are located in Illinois. The inventors of the patents-in-suit, third party witnesses, are believed to reside in Davis, West Virginia; Philadelphia, Pennsylvania; Elkins Park, Pennsylvania; and Cherry Hills, New Jersey. Often, as the defendants' answers and counterclaims suggested will be the case in the present litigation, the attorneys who prosecuted the patents-in-suit before the United States Patent and Trademark Office (USPTO) have their work criticized or questioned and are called as witnesses at trial. Here, Defendants L. L. Bean, Hotwire and Groupon have all asserted a counterclaim that the patents-in-suit are invalid for failure to comply with the provisions of 35 U.S.C. § 112 requiring the inventor to particularly describe and claim his or her invention and set forth the best mode of practicing the invention. (Docket No. 39 at p. 14; Docket No. 44 at p. 11; and Docket No. 46 at p. 19). As a result, the prosecuting attorneys who drafted or revised the allegedly offending specification or claims are likely to be witnesses regarding these defenses. The patent attorneys that prosecuted the patents-in-suit are located in Boston, Massachusetts; Fort Worth, Texas; and Boulder, Colorado. Maine is not any more convenient than Illinois for these third party witnesses, much less "clearly more convenient."

L.L. Bean has provided testimony that its headquarters and its employees are generally located in Maine. However, L. L. Bean has not identified where the accused web servers are located or specifically identified any witnesses or their locations. Additionally, L. L. Bean has not provided any information about the identity and location of any third party consultants, vendors, or service providers, if any, involved in the design and operation of its accused website and targeted email offers. Publicly available information indicates that L. L. Bean's mobile commerce website was designed was built by Usablenet. (Ex. C, July 6, 2011 Press Release). Usablenet is located in New York, Los Angeles, and London. (Ex. D, Usablenet Webpage). Another publicly available document indicates that IBM Global Business Services consultants helped design aspects of L. L. Bean's website. (Ex. E, IBM press release). To the extent that any such third parties are not located in Maine, a transfer to Maine would not be more convenient to them.

Accordingly, L. L. Bean has not proven that this factor favor clearly favors transfer from Illinois to Maine.

Since none of the "convenience" factors favor a transfer to Maine, several of the factors are neutral, and Illinois would be more convenient for the third party witnesses and Illinois was Pinpoint's choice of forum, L. L. Bean's motion to transfer should be denied.

### B. Public Interests – Interest of Justice

A motion to transfer under Section 1404(a) also requires an evaluation of the interests of justice. "Courts in this District have looked to three specific considerations when examining which forum is supported by the interests of justice: 'the court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in their locale." Borgwarner, Inc. v. Hilite Int'l, Inc., 2008 U.S. Dist. LEXIS 62306, at *13 (N.D. Ill. Aug. 14, 2008).

Regarding the Courts' familiarity with patent law, both districts are equally capable of resolving federal patent litigation. Patent law and the determination of infringement is the same law nationwide, so this factor is neutral.

L.L. Bean seeks to downplay the interest this District has in this matter, but the fact is that this District has a significant interest. L.L. Bean admits that it is registered to do business in the State of Illinois. (Docket No. 39, ¶ 8). L.L. Bean further admits that operates or conducts business through the accused infringing website www.llbean.com and through retail stores in this judicial district. Id. "This District has stated that 'the Northern District of Illinois has an interest in protecting its citizens from infringement and preventing infringers from operating within its boundaries.'" Borgwarner, Inc., 2008 U.S. Dist. LEXIS 62306, at *16. Though L.L. Bean's corporate headquarters may be in Maine, Illinois nevertheless holds a significant interest.

L. L. Bean has placed heavy emphasis on statistics regarding the number of pending civil cases and the median time to trial in civil cases for the Northern District of Illinois and the District of Maine. In analyzing a transfer motion brought before him, Judge Kennelly disregarded the same type of statistics because they were not particular to patent infringement cases:

> General statistics of this sort are, in the Court's view, relatively meaningless in the section 1404(a) analysis. They consist of averages for cases of all types and tell the reader nothing about cases of the particular type at issue. Specifically, these statistics say nothing at all about patent infringement cases and how quickly they proceed to trial in the two districts. The Court does not regard this factor as tilting the balance one way or the other.

Rabbit Tanaka Corp. USA v. Paradies Shops, Inc., 598 F. Supp.2d. 836, 841 (N.D. Ill. 2009). L. L. Bean's reliance on general statistics should not tilt the balance toward transferring this case to

Maine.  On the other hand, the Northern District of Illinois has achieved one of the fastest times to resolution in patent cases over the last decade, taking just .95 years on average.[1]

The Northern District of Illinois adopted local patent rules effective October 1, 2009 which provide greater certainty as to procedures and scheduling for patent infringement litigants. In fact, the Local Patent Rules are designed to get a patent case to trial in approximately two years.  The Northern District of Illinois was one of fourteen United States district courts selected to participate in the Patent Pilot Project with ten designated Patent Pilot Project judges. (http://www.ilnd.uscourts.gov/home/_assets/_news/Patent%20Pilot%20Program%20(09-19-11).pdf).  Maine has not adopted local patent rules nor was Maine selected to participate in the Patent Pilot Project.  Accordingly, this should favor venue in Illinois rather than a transfer to Maine.

For the foregoing reasons, the public interests do not favor a transfer to Maine.

## IV.    CONCLUSION

For all of the foregoing reasons, Pinpoint respectfully requests that the Court deny Defendant L. L. Bean's Motion to Sever and Transfer.

Respectfully submitted,

/s/ David J. Mahalek
Paul K. Vickrey
Patrick F. Solon
Paul C. Gibbons
David J. Mahalek
Brian E. Haan
NIRO, HALLER & NIRO
181 W. Madison, Suite 4600
Chicago, IL 60602
(312) 236-0733
*Attorneys for Pinpoint Incorporated*

---

[1] Mark A. Lemley, *Where to File Your Patent Case*, 38 AIPLA Q.J. 401, 414 (2010).

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 18, 2011 the foregoing

### PINPOINT'S OPPOSITION TO DEFENDANT
### L. L. BEAN'S MOTION TO SEVER AND TRANSFER

was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel of record.

Todd C. Jacobs
Jacob D. Smith
GRIPPO & ELDEN LLC
111 S. Wacker Drive
Chicago, IL 60654
(312) 704-7700
Fax: (312) 558-1195
tjacobs@grippoelden.com
jdsmith@grippoelden.com

R. David Donoghue
Daniel L. Farris
HOLLAND & KNIGHT
131 S. Dearborn Street, 30th Floor
Chicago, IL 60603
(312) 236-3600
Fax: (312) 578-6666
David.donoghue@hklaw.com
Daniel.farris@hklaw.com

J. David Hadden
Ryan J. Marton
Hector J. Ribera
Elizabeth J. White
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
(650) 988-8500
Fax: (650) 938-5200
dhadden@fenwick.com
rmarton@fenwick.com
hribera@fenwick.com
*Attorneys for Groupon, Inc.*

Peter J. Brann
Stacy O. Stitham
David Swetnam-Burland
BRANN & ISAACSON
184 Main Street, Fourth Floor
Lewiston, Maine 04243
(207) 786-3566
Fax: (207) 783-9325
pbrann@brannlaw.com
sstitham@brannlaw.com
dsb@brannlaw.com
*Attorneys for L.L. Bean, Inc.*

John G. Bisbikis
Brent A. Hawkins
Brett E. Bachtell
MCDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, IL 60606
(312) 984-3612
Fax: (312) 984-7700
jbisbikis@mwe.com
bhawkins@mwe.com
bbachtell@mwe.com
*Attorneys for Orbitz, LLC*

Craig D. Leavell
James B. Medek
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2105
Fax: (312) 862-2200
craig.leavell@kirkland.com

Atif Khawaja
Robert A Gretch
Sharon Helen Billington
Kirkland & Ellis
153 East 53rd Street
New York, NY 10022
(212)446-4800
Fax: (212) 446-4900
atif.khawaja@kirkland.com
robert.gretch@kirkland.com
sharon.billington@kirkland.com
*Attorneys for Hotwire, Inc.*

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

/s/ David J. Mahalek
Attorneys for Pinpoint Incorporated
NIRO, HALLER & NIRO