# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PINPOINT INCORPORATED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  11 C 5597 |
| ) | |
| GROUPON, INC.; HOTWIRE, INC.; ) | |
| L.L. BEAN, INC.; and ORBITZ, LLC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Before the court is the motion of defendant L.L. Bean, Inc. to sever and transfer the claims asserted against it to the District of Maine.  For the reasons explained below, the motion is granted.

## BACKGROUND

Pinpoint, Inc. brings this patent infringement action against Groupon, Inc.; Hotwire, Inc.; L.L. Bean, Inc.; and Orbitz, LLC. Pinpoint alleges that the defendants have infringed three patents: "Pseudonymous Server for System for Customized Electronic Identification of Desirable Objects," United States Patent No. 5,754,938; "System and Method for Providing Access to Video Programs and Other Data Using Customer Profiles," United States Patent No. 7,853,600 B2; and "System and Method for Providing Access to Data Using Customer Profiles," United States Patent No. 8,056,100.

L.L. Bean moves for severance and transfer.

## **DISCUSSION**

### **A. Misjoinder**

Under Federal Rule of Civil Procedure 20(a)(2), parties may be joined in one action as defendants where (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences;" and (2) "any question of law or fact common to all defendants will arise in the action."

Although the second requirement of Rule 20(a)(2) appears to be satisfied, the first requirement is not. As L.L. Bean points out, defendants are unrelated companies that have nothing in common except Pinpoint's allegation that they have infringed the same three patents. Pinpoint offers a lame response: "All of the accused products are extremely similar" (an allegation that is not included in the complaint) because they "involve proxy servers, web servers, databases, websites, user accounts, customer profiles, and targeted email offers to specific customers." (Pl.'s Opp'n at 4.) The defendants' operation of unrelated websites does not establish a common transaction or occurrence. We concur with our colleagues in this district, who have consistently held that the first element of Rule 20's joinder test is not met where, as here, plaintiff merely accuses unrelated defendants of independently infringing the

same patent.[1] See, e.g., ThermaPure, Inc. v. Temp-Air, Inc., No. 10 CV 4724, 2010 WL 5419090, at *4 (N.D. Ill. Dec. 22, 2010) (collecting cases); Androphy v. Smith & Nephew, Inc., 31 F. Supp. 2d 620, 623 (N.D. Ill. 1998) ("[C]laims of infringement against unrelated defendants, involving different [products], should be tried separately against each defendant."); Billingnetwork Patent, Inc. v. Avisena, Inc., No. 09 CV 8002, 2010 WL 45765 (N.D. Ill. Jan. 4, 2010); Rudd v. Lux Prods. Corp., No. 09 CV 6957, 2011 WL 148052, at *3 (N.D. Ill. Jan. 12, 2011); Spread Spectrum Screening, LLC v. Eastman Kodak Co., No. 10 CV 1101, 2010 WL 3516106, at *2 (N.D. Ill. Sept. 1, 2010).

Because Pinpoint does not assert a right to relief against the defendants that arises out of the same transaction or occurrence, the defendants have been misjoined, and L.L. Bean's motion to sever will be granted. Furthermore, Pinpoint will be required to dismiss two of the three remaining defendants (Groupon, Hotwire, and Orbitz) without prejudice and proceed in this action against only one of those defendants. If Pinpoint wishes to pursue the two defendants it chooses to dismiss, it will have to file separate

---

[1] This district's prevailing approach is in accord with the Leahy-Smith America Invents Act, which became effective a month after the instant action was filed. The Act includes a provision (which does not apply to cases filed before the effective date of the Act) stating that accused patent infringers may be joined in one action as defendants only if two conditions are met: (1) the right to relief against them must arise "out of the same transaction, occurrence, or series of transctions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling *of the same accused product or process*"; and (2) "questions of fact common to all defendants or counterclaim defendants will arise in the action." 35 U.S.C. § 299 (emphasis added).

lawsuits against them. In the event that those suits are refiled in this district, Judge Shadur's remarks in <u>Billingnetwork Patent</u> are applicable: Pinpoint's counsel must not fill out the cover sheets on those new actions as reflecting the refiling of a previously-dismissed action; no motion for reassignment on grounds of relatedness would be appropriate; and we would have no objection to an agreement among the parties that would allow for the coordination of overlapping discovery to avoid duplication.

**B.     Transfer**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). We may transfer the severed claims against L.L. Bean if (1) venue is proper in both this court and in the District of Maine; (2) the District of Maine is more convenient for the parties and witnesses; and (3) transfer would serve the interests of justice. See, e.g., <u>Abbott Labs. v. Selfcare, Inc.</u>, No. 98 C 7102, 1999 WL 162805, at *1 (N.D. Ill. Mar. 15, 1999) (Grady, J.). "The movant . . . has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." <u>Coffey v. Van Dorn Iron Works</u>, 796 F.2d 217, 219-20 (7th Cir. 1986).

There is no dispute that venue is proper both here and in the District of Maine, so we will discuss the second and third factors.

1.  **Convenience Factors**

To evaluate the convenience of one venue over another, we consider five factors: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the parties; and (5) the convenience of witnesses.  Abbott Labs., 1999 WL 162805, at *3.

   a.  **Plaintiff's Choice of Forum and Situs of Material Events**

"A plaintiff's choice of forum is generally given substantial weight, particularly when it is the plaintiff's home forum." Amorose v. C.H. Robinson Worldwide, Inc., 521 F. Supp. 2d 731, 735 (N.D. Ill. 2007).  But the weight given to its choice of forum "is lessened if the chosen forum has relatively weak connections with the operative facts giving rise to the claim."  Von Holdt v. Husky Injection Molding Sys., Ltd., 887 F. Supp. 185, 188 (N.D. Ill. 1995).

Pinpoint is a Texas corporation with a principal place of business here in this district.  Its choice of forum is entitled to little weight, though, because this district has a weak connection with the operative facts of its claims.  In patent infringement cases, "the location of the infringer's principal place of business is often the critical and controlling consideration because such suits often focus on the activities of the alleged infringer, its employees, and its documents, rather than upon those of the plaintiff."  Cooper Bauck Corp. v. Dolby Labs., Inc., No. 05 C

7063, 2006 WL 1735282, at *5 (N.D. Ill. June 19, 2006) (internal quotation marks and brackets omitted); see also ThermaPure, 2010 WL 5419090, at *6. In addition, "[i]n infringement litigation involving Internet websites courts have tended to emphasize the location where the website is maintained--otherwise the alleged tort would be too diffuse to pinpoint." Swift v. Medicate Pharmacy, Inc., Nos. 10 C 689 & 10 C 1874, 2010 WL 3548006, at *4 (N.D. Ill. Sept. 3, 2010). According to Pinpoint, this case is about L.L. Bean's operation of its website and promotional e-mails to customers. Although L.L. Bean's website "reaches into Illinois,"[2] as Pinpoint argues (as it reaches throughout the country), L.L. Bean is headquartered in Freeport, Maine, and it conducts all of its website operations there, not in Illinois. L.L. Bean's employees perform all activities relating to customer profiles and promotional e-mail in Maine. The employees most knowledgeable about these activities, as well as the relevant documents, are located in Maine. (L.L. Bean's Mot. to Sever and Transfer, Ex. 2, Decl. of Peter Liberatore ¶¶ 5, 7-11.) The alleged conduct that gives rise to Pinpoint's claims occurred in Maine, and the situs of material events is therefore the District of Maine.

---

[2] Pl.'s Opp'n at 8.

Pinpoint's choice of forum weighs only slightly against transfer, while the situs of material events weighs strongly in favor of transfer.

### b. <u>Relative Ease of Access to Sources of Proof</u>

Pinpoint does not contest L.L. Bean's assertion that the documents relevant to its allegedly infringing conduct are located in Maine, but does note that its own documents are located here in Chicago and argues that "in this day and age," the transfer of documents for use in litigation is no great burden. (Pl.'s Opp'n at 8.) In our view, the location of Pinpoint's documents is not a significant consideration because it is L.L. Bean's documents that will constitute the bulk of the relevant evidence, although we agree that advances in technology have made the movement of information much easier and cheaper. Thus, we conclude that the relative ease of access to sources of proof slightly supports transfer.

### c. <u>Convenience of the Parties and Witnesses</u>

This factor is neutral as to the parties themselves; this district is more convenient for Pinpoint, and the District of Maine is more convenient for L.L. Bean. The convenience of the witnesses, on the other hand, weighs in favor of transfer. Again, the bulk of the evidence will come from L.L. Bean. None of its witnesses are located in Illinois; they are in Maine and will have to be deposed there. Pinpoint points out that various third-party

witnesses and the prosecuting attorneys who drafted or revised the patent claims at issue are scattered throughout the eastern half of the country, but none of these potential witnesses are located in Illinois, so they do not change the analysis. The convenience of the witnesses favors transfer.

### 2. Public Interest Factors

When examining the interests of justice (often referred to as the "public interest" factors), we focus on the efficient administration of the court system and consider the courts' familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in their locale. St. Paul Fire & Marine Ins. Co. v. Brother Int'l Corp., No. 05 C 5484, 2006 WL 1543275, at *1 (N.D. Ill. June 1, 2006). The parties agree that this court and a court in the District of Maine are equally capable of interpreting and applying federal patent law, so that is a neutral factor.

#### a. Speed at Which the Case Will Proceed

L.L. Bean cites statistics indicating that the District of Maine's docket is much less burdened than the docket of this court. For the twelve-month period ending September 30, 2010, the District of Maine had 395 pending civil actions, and the Northern District of Illinois had 8,786. When one considers the number of judges in each district, it appears that the dockets of judges in the District of Maine are considerably lighter. In the same time

period, 9 civil trials were held in the District of Maine, and 113 civil trials were held here. The median time to trial in Maine was not reported because there were less than ten trials, but we can compare the two districts' median times to disposition, which are very similar. See Statistics Division, Administrative Office of the United States Courts, Judicial Business of the United States Courts, tbls. C-5, C-6 & C-10 (2010), available at http://www.uscourts.gov/Statistics/JudicialBusiness/JudicialBusiness2010.aspx. Pinpoint does not dispute that the District of Maine has a lighter docket, but discounts the importance of "general statistics," observing that the Northern District of Illinois "has achieved one of the fastest times to resolution in patent cases over the last decade, taking just .95 years on average."[3] (Pl.'s Opp'n at 11-12.) Pinpoint also emphasizes that the Northern District of Illinois has two features that the District of Maine lacks: local patent rules and participation in the Patent Pilot Program (which is designed to enhance patent expertise in the federal courts).

This district's participation in the Patent Pilot Program is not relevant here. This case was randomly assigned to us, and we did not decline to accept it. Similarly, the existence of our local patent rules does not affect our analysis because there is no indication that they would reduce the length of time it would take

---

[3]/ It is somewhat ironic that plaintiff (jointly with defendants) proposed a scheduling order, which we declined to enter, that would have taken this case well into the year 2013 and likely 2014.

to resolve this particular case. See, e.g., ThermaPure, 2010 WL 5419090, at *8 (rejecting argument that this district' local patent rules reduce the cost and expense of patent litigation). The important element is that the docket of the District of Maine is much lighter. That district's median time from filing to disposition, however, is similar to that of this district, so we find that the speed at which the case will proceed weighs just slightly in favor of transfer.

      **b.    Desirability of Resolving Controversies in Their Locale**

L.L. Bean contends that of the two venues, the District of Maine has a stronger interest in this action. We agree. Pinpoint is correct that the Northern District of Illinois has an interest in protecting its citizens from infringement, but the District of Maine has a stronger interest. L.L. Bean's headquarters and employees are there, and that is where the "impact of the adjudication" of Pinpoint's claims would be felt. See ThermaPure, 2010 WL 5419090, at *9.

In sum, L.L. Bean has met its burden of establishing that the District of Maine is clearly more convenient. The situs of material events strongly favors transfer. Pinpoint's choice of forum weighs against transfer, but only slightly so because this forum has a tenuous connection with the operative facts. The relative ease of access to sources of proof weighs slightly in favor of transfer. While the parties' convenience is a neutral

factor, the convenience of witnesses weighs in favor of transfer. The familiarity-with-law factor is neutral, and the speed at which the case will proceed to trial weighs slightly in favor of transfer. In addition, transfer would be in the public interest because of the desirability of resolving controversies in their locale. Accordingly, transfer is appropriate.

## CONCLUSION

For the foregoing reasons, the motion of defendant L.L. Bean, Inc. to sever and transfer the claims against it to the District of Maine [41] is granted. The Clerk is directed to transfer the claims against L.L. Bean to the District of Maine. Plaintiff is directed to dismiss without prejudice, by December 12, 2011, two of the remaining three defendants in this action. If plaintiff chooses to refile actions in this district against the two dismissed defendants, it should do so in accordance with this opinion.

DATE: December 5, 2011

ENTER: _____
John F. Grady, United States District Judge